829 F.2d 35
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Willie COUNCIL, Plaintiff-Appellant,
v.
John LEHMAN, Secretary of the Navy, Defendant-Appellee.
 No. 87-3015
 United States Court of Appeals, Fourth Circuit.
 Submitted July 9, 1987.
Decided September 3, 1987.
 
 Samuel Stuart Popkin (Popkin & Associates, on brief), for Appellant.
 Stephen Aubrey West (Office of the U. S. Attorney, on brief), for appellee.
 Before K.K. HALL and WILKINS, Circuit Judges, and G. ROSS ANDERSON, Jr., District Judge for the District of South Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Plaintiff Willie Council sued his former employer John Lehman, Secretary of the Navy, asserting claims under the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, et seq. (Title VII), and 42 U.S.C. Sec. 1981.[1] Council, a black man, alleges that after eight years as a fire fighter for the Camp Lejeune Fire Department ('the Fire Department'), he was discharged in 1982 because of his race. At the conclusion of discovery, the district court granted the government's motion for summary judgment. We affirm.
 
 I.
 
 2
 The material facts in this matter are undisputed. During the period of June through September 1981, Council stole seven fire hose nozzles from two of the fire stations located on the Camp Lejeune base. The total value of the stolen nozzles was One Thousand Six Hundred Fifty-three and No/100 ($1,653.00) Dollars. Council proceeded to sell six of the nozzles to local off-base volunteer fire departments for purely personal gain. In October and November 1981 Council gave sworn statements to base investigators concerning his misappropriations of government property.
 
 
 3
 On January 29, 1982, Council was convicted in the United States District Court for the Eastern District of North Carolina of three (3) counts of misappropriation of government property, a misdemeanor. The Court suspended the sentence and placed Council on probation. Subsequent to the conviction, Division Head Fire Chief Elmer Padgett commenced a pre-action investigation.
 
 
 4
 In determining what adverse action to recommend, Chief Padgett relied on Base Order 12750.1H.[2] Based on his investigation, Council's criminal conviction and Base Order 12750.1H, Chief Padgett recommended discharge. On April 2, 1982 Council was terminated.
 
 
 5
 Council contends that notwithstanding his conviction, he was discharged because of his race. As evidence of the government's discrimination, Council refers this Court and the district court to the government's treatment of three former co-employees also guilty of rules infractions.
 
 
 6
 Edward M. Kearney, a white employee of the Camp Lejeune Fire Department, was convicted on or about January 11, 1982 of felonious possession of marijuana. This misconduct occurred off-base while Kearney was off-duty. Chief Padgett initiated an informal investigation of Kearney's job performance. The purpose of this investigation, conducted pursuant to Base Order 12750.1H, was to determine whether the off-duty, off-base misconduct had adversely affected the employer/employee relationship. Specifically, Padgett instructed Kearney's immediate supervisor to monitor Kearney's performance to discover any adverse affects from the possible drug abuse. Since no connection between the off-base, off-duty misconduct and Kearney's job performance could be substantiated, no disciplinary action was taken against Kearney.
 
 
 7
 Two other white employees of the Camp Lejeune Fire Department, Raymond C. French and C. J. Jones, were guilty of infractions in 1982. Both French and Jones were instructors who trained other fire fighters. A pre-action investigation revealed that both men had violated conflict of interest provisions by receiving pay from a local community college for instructional services. The services were provided while French and Jones were on duty. Consequently, their dual activities created an impermissible conflict of interest. French received a forty-five (45) day suspension without pay. No action was taken against Jones since he retired during the course of the investigation.
 
 
 8
 Council maintains that the disciplinary treatment of these three individuals substantiates his discrimination claim. He considers his co-employees' offenses, felonious possession of marijuana and conflict of interest, to be more serious rules violations than his theft of government property. Council contends that the similarity of all of these offenses is established by the regulations which permit discharge as potential disciplinary responses. No employee other than Council has been investigated, convicted or disciplined in any way for theft of government property from the Fire Department.
 
 II.
 
 9
 In order to survive a motion for summary judgment Council must establish a prima facie case of racially disparate treatment. The district court concluded that he failed to meet this initial burden. Our review of this ruling is limited to a determination of whether a genuine issue of material fact exists and whether the law was applied correctly by the lower court. Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974).
 
 
 10
 The appropriate fact-finding process in a Title VII suit for racially disparate treatment has been addressed by the Supreme Court many times. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L.Ed.2d 668, 93 S.Ct. 1817 (1973); and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 67 L.Ed.2d 207, 101 S.Ct. 1089 (1981). A plaintiff may prove the discriminatory intent of the defendant through either direct or circumstantial evidence. The Court has provided explicit guidance for the order of proof and the allocation of burdens in such cases:
 
 
 11
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by the preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 12
 Burdine, 450 U.S. at 252-53 (citations omitted).
 
 
 13
 Council's situation differs from the facts of McDonnell Douglas and many other Title VII plaintiffs. His claim arises from an alleged discriminatory disciplinary decision rather than a discriminatory hiring decision. See McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 49 L.Ed.2d 493, 96 S.Ct. 2574 (1976). This Court addressed similar circumstances in Moore v. City of Charlotte, 754 F.2d 1100, cert. denied, 472 U.S. 1021 (1985), and formulated the necessary elements of a prima facie case of discriminatory disciplinary action. A prima facie case may be established upon a showing '(1) that the plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that the disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.' Moore, 754 F.2d at 1105-06.
 
 III.
 
 14
 In opposition to the government's motion for summary judgment, Council offered no direct evidence of discriminatory intent held by his superiors. Nor did he offer evidence of any such pattern of discriminatory behavior by the Camp Lejeune Fire Department. Rather, Council relied exclusively on circumstantial proof of discriminatory action under the Moore framework.
 
 
 15
 It is undisputed that Council has satisfied the second element of the prima facie test. Clearly, the disciplinary action taken against him, discharge, was more severe than that which his counterparts received. Council fails to establish his prima facie case, and the district court so found, on the first element.
 
 
 16
 A prerequisite to comparison of disciplinary treatment among individuals is a similarity of the offenses. Moore, 754 F.2d at 1106. Council urges this Court to discern discriminatory intent based upon a comparison of misappropriation of government property; off-duty, off-base felonious possession of marijuana; and conflict of interest activities.
 
 
 17
 Council contends that since discharge is a potential disciplinary response to each of these offenses, they are sufficiently similar to establish discriminatory intent. Although harshness of the penalty has been employed by courts before in proportionality analysis[3] we decline to use this method in the instant case. The permissible punishment for each offense ranged from reprimand to discharge. These parameters are too broad to permit a meaningful comparison of the offenses on this basis.
 
 
 18
 A more reasonable basis for comparison is the harm caused or threatened to the victim or society. This method of comparison has also received approval among various courts. Solem v. Helm, 463 U.S. 277 at 293, 77 L.Ed.2d 637, 103 S.Ct. 3001 (1983). Additionally, this comparison should incorporate any system of classification of offenses created by the employer. Moore, 754 F.2d at 1108. Base Order 12750.1H provides that an important consideration in formulating disciplinary action is the adverse effect on the employer/employee relationship caused by the misconduct. See also Phillips v. Bergland, 586 F.2d 1007 (4th Cir. 1978).
 
 IV.
 
 19
 We will first consider Council's misconduct under this analysis. The theft of fire fighting equipment had the immediate potential to directly threaten the safety of fellow employees and the public. By stealing government property and removing it from the base, Council's conduct had an immediate harmful effect on the employer-employee relationship.
 
 
 20
 Kearney was convicted of felonious possession of marijuana. Chief Padgett and Kearney's immediate supervisor conducted investigations to closely monitor his job performance. Despite this scrutiny the misconduct appeared to have no effect upon his on-duty activity. Of critical importance is that the conduct occurred off-base while Kearney was off-duty. Kearney's misconduct created no harm or threat to fellow employees or the public. Furthermore, despite close scrutiny no adverse effects on the employer/employee relationship materialized from the conviction.
 
 
 21
 French and Jones violated conflict of interest provisions by receiving pay from a local institution for instructional services while on duty. These offenses did not harm or threaten fellow employees or the public. Since both men were employed as instructors, not fire fighters, their unavailability during 'outside' classes could not have resulted in a shortage of fire fighters during a fire. No evidence was presented that they were derelict in their on base duties as a result of the conflict of interest. Certainly, their misconduct damaged the employer/employee relationships. However, the damage was moot in regard to Jones since he retired during the investigation. Any damage in regard to French was cured after he received and fully served his disciplinary suspension.
 
 
 22
 There is simply insufficient similarity among these offenses to permit a principled comparison for the purpose of revealing discriminatory intent under the Moore framework. Council failed to establish a prima facie case of discriminatory disciplinary action as a matter of law. Accordingly, the district court properly granted the government's motion for summary judgment.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The Supreme Court's holding in Brown v. General Services Administration, 425 U.S. 820 (1976), forecloses any suits brought pursuant to 42 U.S.C. Sec. 1981 which prior to the enactment of Title VII of the Civil Rights Act, 42 U.S.C. Sec. 2000e-16(c), had been extensively employed by plaintiffs as an alternative jurisdictional basis. As noted in Brown 'Sec. 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment.' 425 U.S. at 835
 
 
 [2]
 Base Order 12750.1H provides in pertinent part that for first offense 'actual or attempted theft of government property or the property of others,' allowable discipline may range from reprimand to discharge. (J.A. p.80)
 
 
 [3]
 See Solem v. Helm, 463 U.S. 277 at 292, 77 L.Ed.2d 637, 103 S.Ct. 3001 (1983)